**Jeremiah Ross, OSB No. 105980**
Email: ross@rosslawllc.com
Ross Law LLC
50 SW Pine St. Suite 402
Portland, Oregon 97204
Phone: (503) 224-1658
Fax: (888) 499-2575

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| A.S. a pseudonym,<br><br>             Plaintiff,<br><br>    vs.<br><br>STATE OF OREGON, by and through its Department of Human Services, RED ROCK CANYON SCHOOL, L.L.C., a limited liability company, RED ROCK CANYON SCHOOL NON-PROFIT ORGANIZATION, a foreign nonprofit; SEQUEL TSI HOLDINGS, LLC, a foreign limited liability company; SEQUEL YOUTH AND FAMILY SERVICES, LLC, a foreign limited liability company; VIVANT BEHAVIORAL HEALTHCARE, LLC, a foreign limited liability company; SEQUEL YOUTH SERVICES OF RED ROCK CANYON, LLC, a foreign limited liability company. MARILYN JONES in her individual and official capacity; JANA MCLELLAN, in her individual and official capacity; GLENDA MARSHALL in her individual and professional capacity; RYAN SANTI, in his individual and official capacity; GENA PALM, in her individual and professional capacity; and JOHN STUPAK, in his individual and official capacity; and CARE YOUTH CORPORATION, a foreign corporation.<br><br>             Defendants. | Case No. 3:23-cv-01643-MO<br><br>FIRST AMENDED COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, A.S. ("Plaintiff") alleges:

1.

The Department of Human Services ("DHS") is a duly authorized agency of Defendant State of Oregon that is responsible for the delivery and administration of programs and services to Oregon's foster children and for providing for their safety and welfare while the foster children are in the State of Oregon's legal custody. Defendant DHS is legally responsible for all acts and omissions of DHS agents, contractors, subcontractors, and their employees, undertaken while acting under the authority of DHS.

2.

Red Rock Canyon School, L.L.C. was a limited liability company with its principal place of business in Utah. Red Rock Canyon School, LLC is legally responsible for all acts and omissions of Red Rock Canyon School, LLC's subsidiaries, agents, contractors, subcontractors, and their employees, undertaken while acting under the authority of Red Rock Canyon School, LLC.

3.

Red Rock Canyon School Non-Profit Organization is a limited liability company with its principal place of business in Utah. Red Rock Canyon School Non-Profit Organization is legally responsible for all acts and omissions of Red Rock Canyon School Non-Profit Organization's agents, contractors, subcontractors, and their employees, undertaken while acting under the authority of Red Rock Canyon School Non-Profit Organization.

4.

Upon information and belief, Care Youth Corporation is a corporation with its principal place of business in Nevada. Upon information and belief, Care Youth Corporation contracted with the State of Oregon to house Oregon foster children, including A.S., at Red Rock Canyon School. Care Youth Corporation is legally responsible for all acts and omissions of Care Youth

Corporation's agents, contractors, subcontractors, and their agents, managers, and employees, undertaken at Red Rock Canyon School.

5.

Sequel Youth Services of Red Rock Canyon, LLC is a liability company with its principal place of business in Alabama. Sequel Youth Services of Red Rock Canyon, LLC is legally responsible for all acts and omissions of Sequel Youth Services of Red Rock Canyon, LLC subsidiaries, agents, contractors, subcontractors, and their employees, undertaken while acting under the authority of Sequel Youth Services of Red Rock Canyon, LLC.

6.

Upon information and belief, Sequel TSI Holdings, LLC and Sequel Youth and Family Services, LLC (collectively "Sequel") both conducted business as Sequel Youth and Family Services and are limited liability companies with their principal place of business in Huntsville, Alabama and manage Sequel Youth Services of Red Rock Canyon, LLC, Red Rock Canyon School Non-Profit Organization, and Red Rock Canyon School. Sequel is legally responsible for all acts and omissions of its subsidiaries, agents, contractors, subcontractors, and their employees, undertaken while acting under the authority of Red Rock Canyon School Non-Profit Organization and/or Red Rock Canyon School, LLC.

7.

Upon information and belief, Vivant Behavioral Health Services, LLC ("Vivant") is an Alabama Limited Liability Corporation that merged with Defendant Sequel Youth and Family Services, LLC and does business as Sequel Youth and Family Services. Upon information and belief, Vivant through Sequel Youth and Family Services and Sequel TSI Holdings, LLC owns, manages, and operates, Sequel Youth Services of Red Rock Canyon, LLC, Red Rock Canyon School Non-Profit Organization, and Red Rock Canyon School, LLC. Sequel is legally

responsible for all acts and omissions of its subsidiaries, agents, contractors, subcontractors, and their employees, undertaken while acting under the authority of Vivant and/or Sequel Youth and Family Services. Unless otherwise specified, Vivant, Sequel TSI Holdings, LLC, Sequel Youth Services of Red Rock Canyon, LLC, Red Rock Canyon School Non-Profit Organization, Red Rock Canyon School, LLC, and Care Youth Corporation, will be referred to as "Red Rock Management."

8.

At all times material, Marilyn Jones ("Jones") was the Oregon Child Welfare Director for the Oregon Department of Human Services and was acting under the color of Oregon Law. Jones was responsible for the safety and welfare of Oregon's foster children, including A.S., at Red Rock, and ensuring Red Rock was operated in accordance with Oregon Law and Oregon DHS policies. She is being sued in her individual and professional capacity.

9.

At all times material, Jana McLellan ("McLellan") was acting under the color of Oregon Law and was Deputy Child Welfare Director for the Oregon Department of Human Services. McLellan was responsible for the safety and welfare of Oregon's foster children, including A.S., at Red Rock Canyon School, and ensuring Red Rock Canyon School was operated in accordance with Oregon Law, Oregon DHS policies. She is sued in her individual and professional capacity.

10.

Glenda Marshall was resource liaison and consultant for Oregon's Child Protective Services that was to ensure while housing Oregon Foster Children, Red Rock Canyon School was operated in accordance with Oregon Law, and that the Oregon foster children housed at Red Rock Canyon School were safe and were not physically, or emotionally abused. She is being sued in her individual and professional capacity.

11.

Ryan Santi was a Sequel Vice President acting on behalf of the State of Oregon to provide for the safety, general welfare, and education for Oregon foster children, including A.S., and was responsible for ensuring that Red Rock Canyon School was operated in accordance with Oregon Law and Oregon DHS policies and to ensure Oregon foster children, including A.S., were housed in a safe environment and not subjected to mental or physical abuse, and were not subjected to unwanted religious teachings at school. He is being sued in his individual and professional capacity.

12.

Gena Palm was the Sequel Executive Director acting on behalf of the State of Oregon to provide for the safety, general welfare, and education that was responsible for ensuring that Red Rock Canyon School was operated in accordance with Oregon Law and Oregon DHS policies and to ensure Oregon foster children, including A.S., were housed in a safe environment and not subjected to mental or physical abuse, and were not subjected to unwanted religious teachings at school. She is being sued in her individual and professional capacity.

13.

John Stupak was the Executive Vice Present and Chief Administrative Officer at Sequel Youth and Family Services acting on behalf of the State of Oregon to provide for the safety, general welfare, and education that was responsible for ensuring Red Rock Canyon School was operated in accordance with the Contract with Oregon DHS, Oregon Law, the Oregon foster children housed at Red Rock Canyon School were safe and were not subjected to unwanted religious teachings at school. He is being sued in her individual and professional capacity.

14.

A.S. is proceeding under a pseudonym. At all times material A.S. was a minor in the legal custody of the State of Oregon under the authority of ORS 419B.100, ORS 419B.150, *et seq.* A.S. is currently 18 years old, and at all times material expressed her sexual identity as bisexual.

15.

At all material times, Red Rock Canyon School was a facility that housed youth located at 747 E. St. George Blvd, in St. George, Utah. The aforementioned facility was a former motel with a large fence encircling it and was to provide residential care and services for youth in DHS foster care. Hereinafter the home is referred to as "Red Rock."

16.

At all material times Red Rock's Management held Red Rock out to the public as a co-ed residential center to house youth. Red Rock's Management held itself out to the public as being able to provide care for youth beyond what a traditional foster care home would provide. This resulted in States throughout the country, including Oregon, housing youth with various backgrounds, including violent youth, and youth addicted to illegal substances, at Red Rock.

17.

From 2017 to 2019 local law enforcement had been called to Red Rock 72 times.

18.

At all material times the State of Oregon contracted with Red Rock's Management to house A.S. and other youth from Oregon at Red Rock. Defendants Jones, McLellan, and Marshall, were aware that the contract for services mandated Oregon foster children to be cared for in accordance with Oregon law.

19.

Through its contract with Red Rock's Management, DHS, Jones, McLellan, and Marshall attempted to defer to Red Rock Management their legal obligations to provide for the safety, welfare, and education of Oregon's foster children housed at Red Rock, including, A.S.

20.

A.S. has ties to Columbia County and has been in and out of the legal custody of DHS throughout her life. DHS has placed A.S. in various foster homes and facilities, including Red Rock, throughout her life. A.S. has severe and ongoing psychological, behavioral, and emotional challenges that are a result of the unstable living environments she has endured throughout her life. These challenges were aggravated by the failures and actions of the Defendants as alleged in this Complaint.

21.

DHS, Jones, McLellan, and Marshall have a special relationship with A.S. as a result of DHS having the legal custody of A.S. As a result, DHS, Jones, McLellan, and Marshall were state actors acting under the color of Oregon Law and owe duties to her as a foster child under the United States Constitution, federal law, Oregon Law, Oregon administrative rules, and the professional standard of care for Oregon child welfare providers as alleged below.

22.

Red Rock's Management and employees, including Stupak, Santi, and Palm, have a special relationship with A.S. as a result of DHS having the legal custody of A.S. and contracting with Red Rock Management to provide for the safety, welfare, housing, and education of Oregon foster children, including A.S., at Red Rock. As a result, Red Rock Management, Stupak, Santi, and Palm were state actors acting under the color of Oregon Law and owe duties to A.S. as a foster child under the United States Constitution, federal law, Oregon Law, Oregon administrative rules, and the professional standard of care for Oregon child welfare providers as alleged in this Complaint.

23.

The United States Constitution's due process clause imposes duties on DHS and child welfare providers acting on DHS's behalf that include, but are not limited to:

    a) Ensuring that each child placed in foster care receives the services necessary to ensure their physical, mental, and emotional well-being in the least restrictive environment.

    b) Provide each child placed in foster care with conditions, treatment, and care that will not needlessly jeopardize the child's physical and emotional well-being.

    c) Ensure that each child placed in foster care is free from the foreseeable risk of physical, mental, and emotional harm.

    d) Ensuring that each child placed in foster care does not leave.

24.

Oregon's laws ensure that each foster child has essential rights including those protected by federal and state constitutions, laws, rules, and regulations as articulated in ORS 418.201(5), and ORS 418.202. These rights are part of the professional standard of care in Oregon for DHS and child welfare providers. These laws mandate that DHS has duty to:

    a) Place each child in foster care in a foster placement that conforms to nationally recommended professional standards, 42 U.S.C. 671(a)(10).

    b) Provide for each child placed in foster care a written case plan that provides for safe, appropriate, and stable foster care placements and implement that plan 42 U.S.C. 671(a)(16), 675(1)(A).

    c) Provide for each child placed in foster care, where reunification is not possible or appropriate, a written case plan that ensures the location of an appropriate adoptive or other permanent home for the child and implements that plan, 42 U.S.C. 671(a)(16), 675(1)(E).

d) Provide for each child in foster care a written case plan that ensures the education stability of the child while in foster care and implement that plan, 42 U.S.C. 671(a)(16), 675(1)(G).

e) Maintain a case review system in which the status of each child in foster care is reviewed every six months by a court or person responsible for case management for purposes of determining the safety of the child, the continuing necessity and appropriateness of the foster placement, the extent of compliance with the permanency plan, and the projected date permanency. 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C); and,

f) Provide to each child in foster care quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22).

25.

Oregon statutes and administrative rules are the professional standard of care for Oregon that impose duties on child welfare providers, including DHS and its child welfare providers:

a) Adhere to a "Foster Children's Bill of Rights" as noted in ORS 418.202 and OAR 413-010-0180. This includes the rights to "be placed in the least restrictive environment that appropriately meets individual needs, "to be protected from physical and sexual abuse, emotional abuse, neglect and exploitation," receive appropriate care, supervision and *discipline,* to be provided free and appropriate public education, to "be provided services to develop a safe permanent alternative to the family" where reunification is not possible, to receive respect, be nurtured, and attend activities in accordance with their background, religious heritage, race and culture with reasonable guidelines as set by a case plan, the visitation plan, and the court, have the ability to make complaints about the care, placement or services that are unsatisfactory or inappropriate, and to be provided with written contact

information of specific individuals whom the child may contact regarding complaints, concerns, or violations of rights. OAR 413-010-0180(1) & (2).

b) Monitor the out-of-home ongoing safety plan by having face-to-face contact with the child's guardians or each safety service provider. OAR 413-080-0059.

c) Visit each foster child at least once a month to have a DHS case worker determine if the child's needs are being met and if their needs have changed. OAR 413-020-0245(1); OAR 413-080-0054(1).

d) Develop and implement service plans and agreements that address the needs, rights, and best interests of the child and to advocate for the child's rights when community members and institutions or DHS appear to encroach on the foster child's rights. OAR 413-010-0210.

e) Respond to concerns in a childcare agency or proctor foster home to address the concerns for the child or young adult. OAR 413-080-0052.

f) Ensuring that group foster facilities, such as Red Rock, used only staff and volunteers who would not jeopardize the health and safety of the children. OAR 419-400-0120, OAR 419-400-230.

g) Ensuring that group foster facilities, such as Red Rock, employed individuals that complied with DHS's background check rules at OAR 407-007-0200 to 407-007-0370, OAR 419-400-230.

h) Ensuring that group foster facilities, such as Red Rock, employed individuals who meet the staff minimum qualifications as stated in the current job description and under OAR 419-400-0000, *et seq*. OAR 419-400-0120, OAR 419-400-230.

i) Ensuring that group foster facilities, such as Red Rock, provided for the safety of children, including adequate supervision. OAR 419-400-0010, OAR 419-400-230.

j) Ensuring that group foster facilities, such as Red Rock, adopted policies and procedures that prohibited: acts designed to humiliate, ridicule, or degrade a child in care or undermine the self-respect in care, using restraint or involuntary seclusion as discipline, using harsh treatment, aversive conditions. OAR 419-400-0150.

k) Ensuring that child-caring agency staff, who had been trained in the use of crisis-intervention system approved by DHS, could restrain children. OAR 419-400-0160.

26.

The professional standard of care in Oregon for child welfare providers, including DHS and its child welfare employees and contractors such as Red Rock Management and their staff, also includes the following duties:

a) A duty to ensure that a foster child's safety, and physical and mental health and well-being is not needlessly jeopardized.

b) A duty not to abuse or neglect foster children.

c) A duty to reasonably prevent foster children from being abused or neglected.

d) A duty to provide foster children with reasonable, stable, and safe foster care planning and placements.

27.

The requirements of ORS 30.275 (1) to (7) are not applicable because A.S. was in the custody of the Department of Human Services when the acts or omissions giving rise to a claim occurred. In any event, the Tort Claims Act requirements have been satisfied.

28.

From January 22, 2018, to May 31, 2019, DHS housed A.S. at Red Rock Canyon School in Utah in accordance with its contract with Red Rock Management that Jones, McClellan, and Marshall were aware of.

29.

A.S. does not have any family, friends, or supportive individuals that reside in or near Utah.

30.

Upon her arrival at Red Rock, A.S. was forced to give up her clothes and her minimal belongings were searched. A.S. then was placed with other roommates in a converted motel room.

31.

After her arrival, Red Rock staff routinely physically restrained A.S. with "pain restraints" that were often undocumented.

32.

On December 31, 2018, Red Rock staff physically restrained A.S. with what Red Rock referred to as a "pain restraint" and escorted her to an isolated room and left her there for hours.

33.

In January 2019 Marilyn Jones and Jana McLellan communicated regarding the State of Oregon's inability to monitor and track Oregon foster children, such as A.S., that were placed in out-of-state facilities, such as Red Rock, to ensure these foster children were safe.

34.

In February 2019 Glenda Marshall became aware of a news report regarding a facility managed by Red Rock Management that was under investigation by Disability Rights Washington for overly restrictive physical restraints, and policies, training, and oversight that did not protect against abusive physical restraint. Upon learning of the abuse, Washington officials removed their foster children. In response to the Disability Rights of Washington Report, Marshall sent an email to Red Rock Management noting "We just wanted to inform you that this afternoon, despite our request to keep this information confidential, the media here in

Oregon was given a list of programs where Oregon youth are placed for treatment in other states." Marshall, Jones, and McClellan did not make an effort to remove A.S. from Red Rock.

35.

On April 5, 2019, Red Rock staff physically restrained A.S. with what Red Rock referred to as a "pain restraint."

36.

On April 16, 2019, Red Rock staff physically restrained A.S. in a "pain restraint." Red Rock then moved her to a room and held her in isolation against her will for a lengthy period of time. Red Rock's physical restraint of A.S. caused A.S. to suffer from abrasions to her arms and shoulders.

37.

In April 2019 an Oregon State Senator sent an email that was communicated to Jones, McLellan, and Marshall informing Oregon DHS that Idaho refused to house foster children at a facility managed by Red Rock Management due to safety concerns for the foster children. Within hours of receiving that email, Marshall forwarded it to a marketing executive working for Red Rock Management. Jones, McLellan, and Marshall did not immediately remove A.S. from Red Rock Canyon School.

38.

On or about April 28, 2019, A.S. was present at Red Rock Canyon School when a large violent riot broke out between numerous youth and staff. This resulted in law enforcement responding to Red Rock with a large police presence armored in tactical gear, pointing weapons, and restraining students, some of whom were bystanders or had just witnessed the riots.

39.

On or about May 1, 2019, Oregon DHS officials went to Red Rock and met with Oregon foster children and noted the children were still very escalated from the riot.

40.

On May 9, 2019 the State of Utah's Department of Human Services restricted Red Rock Canyon School's licenses to conditional status because: 1) it had determined Red Rock Canyon School's staffing ratios were unlawful and led to violence at Red Rock Canyon School; 2) Staff had worked at Red Rock Canyon School after expiration of their background screening; 3) Red Rock Canyon School failed to report the April 28, 2019 riot to Utah officials until May 1, 2019; 4) Red Rock Canyon School made humiliating and degrading comments to residents of the program; 5) Red Rock Canyon School was permitting students to "restrain" other students; 6) Red Rock Canyon School was permitting its staff to mistreat, abuse, and disrespect students.

41.

 In May 2019, Jones, Marshall, and McLellan were aware of the April 2019 Red Rock riot and that Utah State and Washington State removed all of their foster children from Red Rock due to concerns that foster children were not safe. A.S. was not immediately removed.

42.

On May 18, 2019, Red Rock staff physically restrained A.S. with what Red Rock Management refers to as a "pain restraint."

43.

While A.S. was residing at Red Rock, Oregon DHS case workers did not have a face-to-face visit with A.S. every thirty days.

44.

While A.S. was residing at Red Rock she was mandated to attend educational classes at Red Rock that were managed and operated by Red Rock's Management. A.S.'s assigned teacher was aware that A.S. identified as bisexual. While attending this mandated school, A.S.'s

assigned teacher constantly subjected A.S. to a barrage of unwanted religious instruction and proselytization. The assigned teacher recited biblical phrases and informed the class, including A.S., that God had created a woman to love a man, and he informed A.S. and others, that they would be sent to hell if they did not adopt and practice the Mormon faith.

45.

While A.S. was residing at Red Rock, A.S. was a victim of routine physical bullying by other residents, she was subjected to verbal and psychological abuse from other residents and staff, and she witnessed violent altercations between students and between students and staff.

46.

While A.S. was residing at Red Rock, she was aware of adult Red Rock staff having physical relationships with minors housed at Red Rock.

47.

While A.S. was residing at Red Rock, she was aware Red Rock staff were providing the minors housed at Red Rock with prescription pills that were not prescribed to the minors.

48.

On May 31, 2019, without any warning, A.S. was flown from St. George, Utah to Portland, Oregon in Multnomah County and driven to Roseburg, Oregon to reside in a youth shelter.

49.

In addition to the physical harms and losses as described above, as a result of the events described above A.S. suffered from fear, isolation, anger, frustration, confusion, loss of trust, sleeplessness, restlessness, and aggravated her ability to deal with stressors in her environment, and loss of educational opportunities.

**NEGLIGENCE**

*(AGAINST DHS AND RED ROCK MANAGEMENT)*

Plaintiff re-incorporates paragraphs 2-49 above for each count below.

**COUNT 1 AGAINST DHS**

50.

At all times A.S. had a legally protected interest to be free from physical and emotional-distress-injury described in this Complaint, because the Court had ordered DHS to be her legal guardian, Oregon law imposes duties, as mentioned in this Complaint, on DHS to provide for the safety and well-being of foster children such as A.S., and DHS holds itself out to the public as an agency that will provide for the safety and well-being of children in its legal custody.

51.

A.S.'s physical and emotional injury as alleged in this Complaint is a result of DHS' individual and/or combined negligent conduct through the actions and/or inactions of its employees and/or agents, including Red Rock Management. More specifically, DHS was negligent in one or more of the following manners:

(a)     Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock hired or retained staff who were not qualified to safely manage students.

(b)     Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock hired or retained staff who were not qualified to physically restrain students.

(c)     Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock failed to adequately train and supervise staff to keep children, such as A.S., safe.

(d)    Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock failed to have an adequate number of staff members to care for A.S.'s safety and well-being.

(e)    Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock failed to have an adequate number of staff trained to intervene to de-escalate physical confrontations.

(f)    Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock failed to prevent children from physically assaulting or restraining other children.

(g)    Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock allowed or failed to prevent staff from emotionally and physically abusing children, such as, A.S.

(h)    Defendant DHS was negligent in placing A.S. into Red Rock, when it knew or should have known, that Red Rock was failing to provide detailed reports of incidents involving physical harm or restraint of A.S.

(i)    Defendant DHS failed to follow Oregon Law and Administrative Rules in certification and re-certification of Red Rock Management to care for foster children, such as A.S.

(j)    Defendant DHS knew, or should have known, they were unable to adequately monitor A.S. in Utah to ensure Red Rock was providing for the safety, care, treatment, and education of A.S.

(k)    Defendant DHS failed to monitor Red Rock by regularly visiting the facility.

(l)    Defendant DHS failed to monitor Red Rock by failing to have Oregon DHS caseworkers have face-to-face visits with A.S. every thirty days.

(m)     Defendant DHS failed to monitor the group home by failing to have caseworkers and/or certifiers have face-to-face visits with the group home employees every thirty days.

(n)     Defendant DHS failed to monitor the group home by failing to have caseworkers and/or certifiers monitor the educational instruction to ensure that it was religiously neutral and did not deprive her of rights to a public education free from sectarian control.

(o)     After the April 2019 riot Defendant DHS was negligent for not immediately removing A.S. from the group home once it had concerns about Red Rock posing a threat to her safety and well-being.

### COUNT 2 AGAINST RED ROCK'S MANAGEMENT

52.

At all times A.S. had a legally protected interest to be free from physical and emotional-injuries described in this Complaint, because the Court had permitted Red Rock Management to house A.S., Oregon Law imposes duties on foster care providers such as Red Rock Management to provide for the safety and well-being of foster children such as A.S., and Red Rock contracted with DHS to provide for foster children, such as A.S., a safe living environment.

53.

A.S.'s physical and emotional harm as alleged in this Complaint is a result of Red Rock Management's individual and/or combined negligent conduct through the actions and/or inactions of its employees and/or agents. More specifically Red Rock's Management was negligent in one or more of the following manners:

(a)     Red Rock Management hired or retained staff who were not qualified to safely manage students.

(b)     Red Rock Management hired or retained staff who were not qualified to physically restrain students.

(c)     Red Rock Management failed to hire and/or adequately train and supervise staff to keep children, such as A.S., safe.

(d)     Red Rock Management failed to have an adequate number of staff members to care for A.S.'s safety and well-being.

(e)     Red Rock Management failed to have an adequate number of staff trained to intervene to de-escalate physical confrontations.

(f)     Red Rock Management failed to prevent children from physically assaulting or restraining other children.

(g)     Red Rock Management allowed or failed to prevent staff from emotionally and physically abusing and exposing children to unlawful activity as described in this Complaint to children, such as, A.S.

(h)     Red Rock Management failed to provide detailed reports of incidents involving physical harm or restraint of A.S.

(i)     Red Rock Management failed to monitor the educational instruction to ensure that it was religiously neutral and did not deprive her of rights to a public education free from sectarian control.

## COUNT 3 NEGLIGENCE *PER SE* AGAINST DHS

54.

Defendant DHS was negligent *per se* for violating the rules and laws that were meant to protect foster children from the types of harm alleged in this Complaint. More specifically:

(a)    DHS, through Red Rock Management, unlawfully placed A.S. in a restraint or involuntary seclusion in violation of ORS 418.523.

(b)    DHS failed to have face-to-face visits with A.S. every thirty days as required by OAR 413-080-0054.

(c)    DHS failed to monitor the out-of-home ongoing safety plan by having face-to-face contact with A.S. as required by OAR 413-080-0059.

(d)    DHS failed to monitor the out-of-home ongoing safety plan by having face-to-face contact with the child's guardians or each safety service provider as required by OAR 413-080-0059.

(e)    DHS failed to respond to the concern in a child-caring agency or proctor foster home by failing to address the concern for the child or young adult as required by OAR 413-080-0052.

(f)    In failing to ensure Red Rock Management used only staff and volunteers who do not jeopardize the health and safety of the children as required by OAR 413-215-0061 and OAR 413-215-0556.

(g)    In failing to ensure Red Rock Management trained the staff and provide an orientation that included discipline and behavior management protocols and when, if ever, restraint and seclusion are permissible. OAR 413-215-0556.

(h)    In failing to ensure Red Rock Management met the minimum staffing patterns as required by OAR 413-215-0561 (1) (2), and (5).

**Count 4 Negligence *Per Se* Against Red Rock Management**

55.

Red Rock Management was negligent *per se* for violating the rules and laws that were meant to protect foster children from the types of harm alleged in this Complaint. More specifically:

(a)    Red Rock Management unlawfully placed A.S. in a restraint or involuntary seclusion in violation of ORS 418.523.

(b)    Red Rock Management staffed the group home with personnel that jeopardized the health, safety, or welfare of children, including A.S. OAR 413-215-0061.

(c)    In failing to ensure Red Rock Management trained the staff and provided an orientation that included discipline and behavior management protocols and when, if ever, restraint and seclusion are permissible. OAR 413-215-0556 or OAR 413-215-0656.

(d)    In failing to ensure Red Rock Management met the minimum staffing patterns as required by OAR 413-215-0561 or OAR 413-215-0061.

56.

As a result of DHS and Red Rock Management's combined negligence as articulated in Counts 1-4 above, A.S. suffered the non-economic damages, as detailed in paragraphs 2-49, she is seeking a reasonable amount to be assessed by a Jury but not to exceed the amount of $250,000.00 and economic damages for future mental health counseling and vocational counseling at an estimated $50,000.00.

**SECOND CLAIM FOR RELIEF**
**BATTERY**
*(AGAINST RED ROCK MANAGEMENT)*

57.

Plaintiff reincorporates paragraphs 2-49 above.

58.

Red Rock Management's employees and agents were acting in the course and scope of their employment when they needlessly caused harmful or offensive touching of A.S. while A.S. resided at Red Rock as alleged in paragraphs 31, 32, 35, 36, and 42.

59.

As a result of Red Rock Management's battery of A.S., A.S. is entitled to non-economic damages in the amount of $50,000.00 for her fear, embarrassment, pain, humiliation, mental anguish, frustration, and distrust of others.

### THIRD CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (AGAINST RED ROCK'S MANAGEMENT)

60.

Plaintiff re-incorporates by reference paragraphs 2-49 above.

61.

Red Rock Management's staff while acting in the course and scope of their employment and while engaging in the acts described in paragraphs 31, 32, 35, 36, 42, 45, 46, and 47, knowingly, and intentionally, caused severe emotional distress to A.S. when they either: physically restrained her, physically subdued her, locked her in an isolated room, or exposed her to activities that endangered her safety, welfare, or well-being. A.S. did in fact suffer severe emotional distress as a result, and the conduct described in paragraphs 31, 32, 35, 36, 42, 45, 46, and 47 are beyond the bounds of all socially tolerable conduct.

62.

As a result of Red Rock Management employees' and agents' intentional infliction of emotional distress on A.S., she suffered the non-economic damages and is seeking a reasonable amount to be assessed by a Jury but not to exceed $50,000.00.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**FIRST AMENDMENT VIOLATION**
*(Against Red Rock Management, Santi, Palm, and Stupak, in their professional capacities)*

63.

As applicable, Plaintiff incorporates the above paragraphs.

64.

Under the First Amendment to the United States Constitution and the Oregon

Constitution, Article I, Section 3, 5, and 8, Red Rock Management, Santi, Palm, and Stupak in

their professional capacities are responsible for the abuse to A.S.'s right to a secular public

education while in legal custody of the State of Oregon and confined to the Red Rock facility.

Under both the Oregon Constitution and the First Amendment to the United States Constitution

made applicable to the States by the Fourteenth Amendment, A.S. had a right to abstain from

practicing religion at Red Rock or from being subjected to religious proselytization while

receiving mandatory educational instruction.

65.

Red Rock's agent violated A.S.'s right to free speech by engaging in the conduct alleged

in paragraph 44 and doing one or more of the following:

a)      Proselytizing religion to A.S. while she was attending a general education class.

b)      Informing A.S. while she was in class that she would be sent to hell if she did not

        adopt the Mormon faith.

c)      Addressing A.S.'s bisexuality by informing her that God created women to love

        men.

Page 23 – FIRST AMENDED COMPLAINT

d)      Imposing the Mormon faith and Christianity on A.S. while she was attending class.

66.

Red Rock's actions noted in the paragraphs above imposed unwanted religious beliefs and proselytization on A.S., which infringed on her right to freely abstain from exercising a religion, her right to free speech, assembly, and free association.

67.

As described above and at least in part, one or more of Red Rock Management's well-established policies, official practices, and/or their acts, described above, caused, or ratified by Santi, Palm, and Stupak, violated Plaintiffs' First and Fourteenth Amendment Rights. As a result, they are liable for the violation of A.S.' right not to be subjected to violations of her rights under the First Amendment to the United States Constitution.

68.

As a result of the violations of A.S.'s Constitutional rights articulated in this Claim for relief, A.S. suffered frustration, embarrassment, anger, confusion, and emotional distress as described in this Complaint.

69.

As a result of the above, A.S. is entitled to an award of non-economic damages in the amount of $25,000.00.

70.

Pursuant to 42 U.S.C. § 1988, A.S. should be awarded her attorney fees and litigation expenses/costs against all Defendants named in this claim.

<u>**F**IFTH **C**LAIM FOR **R**ELIEF</u>
**42 U.S.C. § 1983**
**FIFTH AND FOURTH AMENDMENT VIOLATION**
**OF LIBERTY INTEREST AND DUE PROCESS**
*(Against Red Rock Management, Santi, Palm, and Stupak, in their professional capacity)*

71.

As applicable, Plaintiff incorporates paragraphs 2-49.

72.

Under the Fifth and Fourteenth Amendments of the U.S. Constitution, A.S. has the right to equal protection, due process of law, and a liberty interest, including the right to be protected from suspected or physical abuse and the right to bodily integrity and physical safety while in the custody of the State of Oregon.

73.

Defendants Red Rock Management, Santi, Palm, and Stupak, in their professional capacity were acting under the color of Oregon Law and had a special relationship with A.S. as she was in the legal custody of the State of Oregon who contracted with Red Rock Management who was acting on behalf of the State of Oregon to provide for her safety and well-being.

74.

As described in the paragraphs above, in violation of the Fifth and Fourteenth Amendment of the United States Constitution Red Rock Management's agents:

a)     Had no lawful or constitutional basis for the use physical abuse, physical restraints, and isolation as described in this Complaint.

b)     Had no lawful or constitutional basis to subject A.S. to extreme, excessive, and potentially deadly physical force resulting in abrasions and bruises.

c)     Had no lawful or constitutional basis to subject A.S. to extreme, excessive, and

Page 25 – FIRST AMENDED COMPLAINT

unnecessary solitary confinement.

75.

As described above and at least in part, one or more of Red Rock Management's and the State of Oregon's well-established policies, official practices, and/or their acts, described above, caused, or otherwise was a driving force to make them liable for, the violation of A.S.'s right not to be subjected to violations of her rights under the Fifth and Fourteenth Amendment to the United States Constitution.

76.

The ratification of the conduct of Red Rock Management and the State of Oregon's agents described above makes Defendants Red Rock Management, Santi, Palm, and Stupak, liable for Red Rock's agents' unconstitutional actions.

77.

As a result of the above conduct in this claim for relief, A.S. is entitled to an award of economic and non-economic damages against Defendant Red Rock Management, Santi, Palm, and Stupak, in the amount of $100,000.00 and $50,000.00 for future mental health counseling.

78.

Pursuant to 42 USC § 1988, A.S. should be awarded her attorney fees and litigation expenses/costs against all Defendants named in this claim.

### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### MONELL UNCONSTITUTIONAL/ILLEGAL CUSTOM, POLICY, OR PROCEDURE
*(Against Red Rock Management, Jones, Marshall, and McLellan in their Professional Capacity)*

79.

As applicable, Plaintiff incorporates paragraphs 2-49.

80.

Red Rock Management and the State of Oregon through Defendant Jones, Marshall, and McLellan had a policy, custom or procedure which allowed Red Rock employees and agents, and State of Oregon employees to fail to meet minimal standards and policies for providing for the safety and welfare of children in the state of Oregon's legal custody as described in this Complaint. This policy resulted in foster children, including A.S., being sent to St. George, Utah where Jones, Marshall, and McLellan knew that the children could not be adequately monitored and the abuse and mistreatment of the children, including A.S., would go undetected because of the policy of not having Oregon DHS caseworkers physically visit the sites or caseworkers having face-to-face visits with the foster children including A.S. This is further evidenced by failure to immediately remove A.S. from Red Rock after learning that other states had concerns regarding the safety of foster children housed in facilities operated by Red Rock Management, and instead corresponding with Red Rock Management to assist Red Rock Management in maintaining a positive public image regarding its care of A.S. and Oregon foster children. These policies also permitted Red Rock Management to subject A.S. to physical and emotional abuse, unlawful physical restraint, and isolation of A.S. without fear of discovery or repercussions from the State of Oregon.

81.

This policy also included Defendant Marshall assisting Red Rock Management in covering up concerns regarding the safety and well-being of Oregon's foster children at Red Rock, including A.S. once it was discovered other states felt Red Rock was unsafe, and that a riot had occurred on the property.

82.

The State of Oregon through Jones, McLellan, and Marshall had specific knowledge of the policy, custom or procedure of unlawfully warehousing Oregon's foster children at Red Rock when they were aware Red Rock Management could not provide for the children's safety and general wellbeing and that children in Red Rock Management's care were subjected to physical and emotional abuse. Jones, McLellan, and Marshall also assisted in attempting to dampen concerns about the safety and wellbeing of Oregon's foster children, including A.S., at

Red Rock by communicating with Red Rock management to control information that was provided to investigative entities and/or the press.

83.

As a result of the unofficial policies, customs or procedures described above, A.S. was subjected to physical and emotional abuse, unlawful restraint and isolation, unnecessary mental suffering, and mental and emotional injury all in violation of the Fifth and Fourteenth Amendment.

84.

As a result of the above conduct in this claim for relief, A.S. is entitled to an award of economic and non-economic damages against Defendants State of Oregon through Jones, McLellan, and Marshall as alleged in paragraph 77.

85.

Pursuant to 42 USC § 1988, A.S. should be awarded her attorney fees and litigation expenses/costs against all Defendants named in this claim.

**42 U.S.C. § 1983**
**SUPERVISOR LIABILITY**
**CIVIL RIGHTS CLAIM – 5th AND/OR 14th AMENDMENTS**
*(Against Santi, Palm, and Stupak in their Individual Capacity)*

86.

Plaintiff realleges and incorporates, as though fully set forth herein, all previous paragraphs above.

87.

Defendants Santi, Palm, and Stupak were supervisors of Red Rock employees at the time of the events alleged herein. The Defendant supervisors oversaw the operations of Red Rock and had a duty to ensure subordinate staff followed all applicable policies, protocols, rules, childcare standards, and legal parameters, as well as a duty to change or update policies when changes were necessary. The Defendant supervisors failed to adequately and constitutionally train and supervise the subordinate staff. As a result of the failure to supervise, the supervisory Defendants are individually liable and were deliberately indifferent to A.S.'s liberty interest, and her right to safety and well-being while in the care of the State of Oregon, and other rights under the Fifth, and/or Fourteenth Amendments of the United States Constitution in one or more of the following particulars:

a) Failing to ensure employees of Red Rock had proper training in deescalating conflict with the minor students.

b) Failing to ensure employees of Red Rock had proper training to not expose the minor children to narcotics use, sexual interactions at the campus, and violence.

c) Failing to ensure employees of the Red Rock exercised proper physical restraint techniques.

Page 29 – FIRST AMENDED COMPLAINT

d)     Failing to ensure employees of the Red Rock documented physical restraint each time it was utilized.

e)     Failing to address the minors' complaints of physical and emotional abuse from staff and exposing minors to drug use and sexual situations.

88.

As noted in the above paragraphs, Defendants Santi, Palm, and Stupak, set in motion Red Rock Management's employees and agents series of acts that they knew or should have known, violated Plaintiff's Fifth and Fourteenth Amendment rights as noted in this claim for relief.

89.

As a direct result of the actions and inactions of Defendants as set forth in paragraphs 31-46 above, A.S. endured and suffered physical injury and severe mental and emotional distress. A.S. seeks non-economic damages in compensatory damages in whatever amount the jury concludes is appropriate, not to exceed the damages as alleged in paragraph 77.

90.

Pursuant to 42 USC § 1988, A.S. should be awarded her attorney fees and litigation expenses/costs against all Defendants named in this claim.

### EIGHTH CLAIM FOR RELIEF
### STATE CREATED DANGER
### CIVIL RIGHTS CLAIM – 5th AND/OR 14th AMENDMENTS
*(Against, Jones, Marshall, and McLellan in their Individual Capacity)*

91.

As applicable, Plaintiff incorporates paragraphs 2-49.

92.

Defendants Jones, Marshall, and McLellan had a special relationship with A.S. as

alleged in paragraph 21.

93.

As alleged in paragraphs, 33, 34, 37, 39, 40, 41 Defendants Jones, Marshall, and McLellan were aware that the situation at Red Rock School and Red Rock Management's failures posed a danger to Oregon's foster children, including A.S. Defendants Jones, Marshall, and McLellan are individually liable and were deliberately indifferent to A.S.'s liberty interest, and her right to safety and well-being while in the care of the State of Oregon, and other rights under the Fifth, and/or Fourteenth Amendments of the United States Constitution because they:

a) Affirmatively placed and continued to place A.S. into a dangerous situation by placing her in an out of state residence with violent and substance addicted youth, and untrained staff who regularly subjected A.S. to pain restraints, isolation, and exposed her to Red Rock employees who were having physical relationships with minors and were unlawfully providing prescription medications to minors.

b) Were deliberately indifferent to the obvious danger and were aware they had no ability to adequately monitor A.S.'s safety, welfare, and general wellbeing at Red Rock despite her being placed in a dangerous situation as fully described in paragraphs 17, 32-47 above and as described in this complaint they took steps to conceal the dangers that Red Rock Management and Red Rock School posed to A.S.

94.

Plaintiff being physically and emotionally abused as described in this Complaint was foreseeable because of Defendants Jones, Marshall, and McLellan knowingly placing and keeping A.S. in the dangerous Red Rock School.

95.

As a direct result of the actions and inactions of Defendants as set forth in paragraphs 31-47 above, A.S. endured and suffered physical injury and severe mental and emotional distress. A.S. seeks non-economic damages in compensatory damages in whatever amount the jury concludes is appropriate, not to exceed the damages as alleged in paragraph 77.

96.

Pursuant to 42 USC § 1988, A.S. should be awarded her attorney fees and litigation expenses/costs against all Defendants named in this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff A.S. prays for judgment against Defendants as follows:

**I.   On Count I-IV of Plaintiffs' First Claim for Negligence**:

1. Economic damages in a reasonable amount to be determined by the jury, but not to exceed $50,000.

2. Non-economic damages in the amount of $300,000.

3. Costs and disbursements incurred herein.

**II.  On the Second Claim for Battery:**

(a) Economic damages in a reasonable amount to be determined by the jury, but not to exceed $50,000.

(b) Non-economic damages in the amount of $50,000.

(c) Costs and disbursements incurred herein.

**III.   On the Third Claim for Intentional Infliction of Emotional Distress:**

(a) Economic damages in a reasonable amount to be determined by the jury, but not to exceed $50,000.

(b) Non-economic damages in the amount of $50,000.

(c) Costs and disbursements incurred herein.

**IV.  On the Fourth Claim for First Amendment Violation:**

  (a)  Non-economic damages in the amount of $25,000.00.

  (b)  Reasonable attorney fees pursuant to 42 USC § 1988.

  (c)  Costs and disbursements incurred herein.

**V.  On the Fifth, Sixth, Seventh, and Eighth Claims for Fifth and Fourteenth Amendment Violations:**

  (a)  Economic damages in a reasonable amount to be determined by the jury, but not to exceed $50,000.00.

  (b)  Non-economic damages in the amount of $150,000.00.

  (c)  Reasonable attorney fees pursuant to 42 USC § 1988.

  (d)  Costs and disbursements incurred herein.

**DEMAND FOR JURY TRIAL**

Dated:  February 26, 2024

ROSS LAW LLC.

s/ Jeremiah Ross
Jeremiah Ross, OSB 105980
Attorney for Plaintiff
Phone: (503) 224-1658
E-mail: ross@rosslawllc.com